## Steigerwalt License

*George W. Heffner*, for appellants.
*Robert H. Jordan*, for board.

DALTON, J., April 7, 1958.—Appellants' application for a restaurant liquor license in West Penn Township, Schuylkill County, was refused by the Liquor Control Board on three grounds: (1) That the license quota of the township is exceeded; (2) that the board was not satisfied that the premises are located in a resort area, and (3) that there is no necessity for an additional retail liquor license in the township.

On appeal to this court, testimony was heard de novo and the matter was subsequently argued before the court en banc.

It is undisputed that the license quota of West Penn Township is very much exceeded. According to the last official census, the population of West Penn Township is only 2,593. The quota allowed by law is three licenses, that is, one for each 1,000 inhabitants or fraction thereof. At the present time, there are 11 licenses

in effect of the type counted against the quota. In addition to those 11 licenses, there are three hotel liquor licenses, one hotel malt beverage license and two club liquor licenses.

However, the Liquor Code of April 12, 1951, P. L. 90, sec. 461(*b*), 47 PS §4-461(*b*), provides that:

"The board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located in a resort area."

The primary question in this case, therefore, is whether West Penn Township is located in a resort area.

Apart from its wooded sections, the land in West Penn Township is predominantly devoted to agriculture. It is traversed by a small stream, known as Lizard Creek, which is stocked with trout. Small game and deer are available for hunting. There are only three summer homes in the area, one of which is still in course of construction. Within a distance of two miles of appellants' premises, there are two privately owned hunting lodges to which some people come from Philadelphia, Allentown, Quakertown, Emaus and Perkasie. However, the number of such people who visit the two hunting lodges does not appear. About a mile from the licensed premises is a small park, known as Bunch's Park, which is located in a small grove and is equipped with playground equipment and other recreational facilities. The extent to which this small park is patronized by nonresidents does not appear.

There are two picnic groves in the area, Cold Spring Grove and Shady Grove. While it was testified that the picnics held there attract people from outside the area, there is no definite evidence of the number of such nonresidents who attend the picnics or the frequency of their attendance. There is also an establishment

known as the Andreas Sporting Club, which has some members from outside the area, and where card parties and wedding parties are occasionally held and where dances are held every Friday night. Again, there is no evidence of the number of nonresidents who attend affairs at the Sporting Club or of the frequency of their attendance. The West Penn Fair is an annual event in the township. However, this fair is held only once a year for two successive days. An organization known as the Carbon Beagle Club conducts a "license trial", which is a competitive event for beagle dogs, for one week in the month of August. This event attracts visitors, some of them from outside the area, but it occurs only once a year.

*Appellants place principal stress upon the hunting and fishing activities in the neighborhood.* It appears that nonresidents from the Allentown and Philadelphia areas and some from outside the State come into that section to hunt and fish. Some residents of New Jersey come there to hunt deer. The influx of nonresidents of the township is greatest on the opening days of the hunting and fishing seasons, but continues to some extent throughout those seasons.

However, that situation is not peculiar to West Penn Township in this age of convenient transportation. Hunters and fishermen are noted for their far-ranging habits. It is common knowledge that thousands of people in urban areas get into their cars and travel anywhere from a half-dozen miles up to a hundred miles or more to hundreds of places in Pennsylvania for a day of hunting or fishing. It is also common knowledge that residents of other States come into all parts of Pennsylvania to hunt and fish, particularly when the open seasons for fish and game in this State do not coincide with the open seasons in their own States.

*There is nothing in this record to justify a conclu-*

*sion that the influx of nonresidents into West Penn
Township for hunting and fishing is any greater than
is normal for any other section of the State where those
activities can be engaged in.*

Small game and deer abound in all parts of the Commonwealth. There are good fishing streams in most parts of the State. A witness for appellants testified on cross-examination: "Q. Do you feel that the Lizard Creek is better fishing than fishing anywhere else in the area? A. No, I wouldn't say that. Let's say it is just as good. Q. And there are many other places in this part of the State that are just as good as Lizard Creek. A. Possibly."

We are agreed that the board correctly decided that West Penn Township is not a resort area within the meaning of the act. If West Penn Township could be declared a resort area on the basis of the evidence in this record, then a similar designation could be made of almost any other rural township which affords hunting and fishing, which has a few small parks or picnic groves, which conducts an annual two-day country fair and holds a few occasional sporting events. And nearby cities and boroughs, where hunters and fishermen and other visitors might stop overnight or partake of their meals, could also be declared to be within a resort area. *Such rulings would stretch the concept of a resort area far beyond anything intended by the legislature and would make a wreck of the quota law. It would constitute an ingenious procedure whereby the legal limitations on the issuance of licenses could be bypassed and the quota law, in areas such as this, made hopelessly inoperative and ineffective.*

Since the premises are not located in a resort area, there is no need to discuss the question of the necessity for an additional restaurant liquor license in the township. The quota law forbids the grant of an additional restaurant liquor license in that municipality.

And now, April 7, 1958, the order of the Liquor Control Board is affirmed, and the application for issuance of a restaurant liquor license is denied.